Rosa y Demetria Pedraza, demandantes y apelantes, *v.* Santini Fertilizer Co., Inc., y Fernando González, demandados y apelados.

No. 5517.—*Sometido:* Junio 10, 1931. *Resuelto:* Marzo 28, 1932.

*González Fagundo & González Jr.,* abogados de las apelantes; *R. Buscaglia y Edelmiro Martínez Rivera,* abogados de la apelada Santini Fertilizer Co., Inc.

El Juez Presidente Señor del Toro, emitió la opinión del tribunal.

Doña Rosa y Doña Demetria Pedraza radicaron en la Corte de Distrito de San Juan una demanda sobre tercería de bienes inmuebles, alegando que en la actualidad, el 30 de junio de 1926 y con anterioridad a esa fecha son y eran dueñas en común y proindiviso de una finca rústica de 161 cuerdas, situada en la municipalidad de Naguabo, que describen detalladamente; que los demandados Santini Fertilizer Co., Inc., en el pleito No. 1905 que seguían contra Fernando González en cobro de pagarés, el 1° de julio de 1926, por medio del márshal de la corte, embargaron todo el derecho, título o interés que González tuviera en la expresada finca de 161 cuerdas, y que González no tiene derecho, título o interés alguno en la repetida finca. Basadas en esos hechos pidieron a la corte que dictara sentencia declarando el embargo ineficaz.

Contestó la demandada aceptando que Doña Demetria es dueña de una mitad proindivisa de la finca en cuestión,

pero alegando que la otra mitad pertenece a la sociedad de gananciales constituída por Doña Rosa con su esposo Fernando González; que la deuda que motivó el embargo en el pleito No. 1905 correspondía a la dicha sociedad de gananciales y, por tanto, que el embargo fué debidamente trabado.

Como materia nueva constitutiva de defensa alegó que doña Rosa adquirió la mitad indivisa de la finca por compra durante su matrimonio con González, incribiéndose la adquisición en el registro desde 1905; que apareciendo del registro que el condominio era ganancial, la demandada abrió un crédito al esposo, y como éste no lo satisficiera, lo demandó, embargando sus bienes para asegurar el pago; que aun admitiendo que doña Rosa fuera la única dueña, está impedida de alegar el carácter privativo del condominio por cuanto permitió que quedara inscrito como ganancial con anterioridad a la deuda de González, a la radicación del pleito y a la anotación del embargo, y que la demandada siendo tercero no puede ser perjudicada por las ocultas confabulaciones de la demandante.

Fué el pleito a juicio y la corte lo falló declarando la demanda sin lugar. La sentencia se basa en una larga opinión. De ella nos limitaremos a transcribir lo que sigue:

"El problema jurídico nos parece sencillo. La tercería es procedimiento adecuado para discutir el título sobre una propiedad embargada. De acuerdo con la extensa historia de la finca, que antes hacemos, no hay duda alguna, y a pesar de la donación y las distintas ventas por que ha pasado la propiedad, el hecho cierto e innegable, es que doña Rosa Pedraza adquirió la mitad de la finca, estando casada con don Fernando González, por título oneroso. Esto levanta una fuerte presunción de que los bienes así adquiridos tienen el carácter de gananciales. El artículo 1316 del Código Civil, en su inciso 1, es terminante en cuanto a este postulado. No ha presentado la demandante, Rosa Pedraza, prueba alguna que destruya esta presunción de bienes gananciales, y las dos escrituras otorgadas en 1917 ante el notario Tous Soto, y a las que nos hemos referido al hacer el historial tal como aparece del certificado del Registrador de la Propiedad, que no fueron presentadas en el registro hasta 10 años después de otorgadas, no pueden cambiar el

verdadero estado legal de los bienes, aun cuando la relación de hechos que las partes hagan en la escritura, haya sido inscrita en el Registro de la Propiedad. Y esta conclusión nos lleva a considerar la defensa que levanta la demandada en cuanto a que por las propias actuaciones de la parte demandante, se le indujo a creer en la existencia de un estado de hechos tal, que fué motivo para que se le concediera crédito en transacciones comerciales habidas con el otro demandado don Fernando González. En 1905 se inscribe en el registro el condominio de doña Rosa. Cuando se inscribe, aparece ella casada con don Fernando González; esta inscripción subsiste en el registro hasta 1927; pero en 1926, la demandada Santini Fertilizer Co., Inc., guiándose por la inscripción que aparece en los libros del registro, concede un crédito a don Fernando González, y entonces no es perturbada la inscripción hasta 1927, en que se quiere dar a los bienes el carácter de privativos. Nos parece aplicable la regla de que cuando una persona induce a otra a actuar en la creencia de que cierto estado de hechos es cierto, dicha persona está impedida de alegar lo contrario. *Dolbeer* v. *Livingston,* 100 Cal. 617. Y si a esta circunstancia se añade el hecho elocuente de que no es sino cuando se interpone el pleito y se traba el embargo, que vienen entonces a inscribirse las escrituras en 1927, tenemos que llegar a que, por lo menos presuntivamente, la demandante con su conducta indujo a la demandada a realizar ciertas transacciones, y ahora no puede impedir que se ejercite un derecho por dicha demandada, cuando ella fué diligente, y tomó las medidas y precauciones aconsejables para su defensa. Como antes decimos, todo lo que se va a discutir en el procedimiento de tercería es quién es el verdadero dueño de los bienes embargados. Cuando se practicó el embargo y se obtuvo la sentencia en el pleito No. 1905, los bienes embargados eran del demandado González y su esposa, adquiridos durante el matrimonio. Cualquiera otra tentativa posterior para quitar a tales bienes el carácter de gananciales, es improcedente, y no demuestra el candor y buena fe con que deben comparecer ante los tribunales los que vienen a ellos en demanda de justicia.''

No conformes las demandantes, interpusieron el presente recurso de apelación. En su alegato señalan la comisión de ocho errores. Los cinco primeros se refieren a la práctica de las pruebas. Los tres últimos versan sobre su apreciación. Prescindiremos del estudio y consideración de los primeros y analizaremos conjuntamente los tres últimos.

Según las certificaciones del registro presentadas como prueba por la propia parte demandada, es ésta la historia de la finca. Se inscribió por primera vez en 1887 a virtud de expediente de dominio tramitado por Felipe Pedraza Hernández, mayor de edad, soltero y vecino de Naguabo, quien dijo haberla adquirido por compra en distintas porciones a varias personas. A la muerte de Pedraza la finca pasó a sus herederos doña Catalina Hernández, madre y doña Rosa López, esposa, a virtud de declaratoria hecha por la Corte de Distrito de Humacao en 1903. La madre y la esposa herederas vendieron sus participaciones a Juan Nogueras Pedraza y éste a su vez vendió a doña Demetria y doña Rosa Pedraza, casada la última con Fernando Gonzá- lez, en 1904. En 1913 se anotó cierta demanda sobre la porción de doña Rosa y en 1926 el embargo decretado en el pleito seguido por Santini Fertilizer Co., Inc., contra Gon- zález. Sigue entonces, en 1927, la inscripción séptima que lo es la de una escritura pública otorgada en 1917 por vir- tud de la cual doña Rosa, con el consentimiento de su esposo González "para el caso de no ser suficiente lo consignado en la propia escritura", vendió su participación a doña De- metria por precio de mil dólares que se entregaron en pre- sencia del notario. Lo consignado en la escritura fué que no obstante lo que aparecía del registro en relación con la finca, lo cierto era que el inmueble perteneció a don Felipe Pedraza quien lo tituló a nombre de un hijo para que a su muerte lo dividiera entre sus herederos; que muertos el padre y el hijo, las herederas de éste, su madre doña Ca- talina y su esposa doña Rosa López, otorgaron por pre- cio convencional escrituras de venta a favor de Juan No- gueras Pedraza y éste a su vez también por precio conven- cional vendió la finca a las demandantes, a las que llegaba en verdad no a título de compra sino de herencia. Gonzá- lez, el esposo de doña Rosa, "declaró ser cierto lo dicho so- bre la adquisición del inmueble, reconociendo que el condo- minio correspondiente en él a su esposa Rosa Pedraza es

propiedad privativa." La última inscripción es la octava, de 1927, causada por la escritura pública otorgada en 1917 por la cual Doña Demetria aparece donando el condominio que adquiriera de su hermana a la misma "siendo causa de esta donación el cariño que se profesan donante y donataria y el deseo libre y espontáneo de la primera de cumplir los de su padre en relación con este inmueble."

Siendo ello así, no habiéndose presentado prueba alguna que demuestre la falsedad de las escrituras públicas otorgadas en 1917, no obstante haberse inscrito después de practicado el embargo a instancias de la demandada en el pleito que siguiera contra González, es necesario concluir que dicho embargo se trabó indebidamente por no ser ganancial el condominio de doña Rosa, sino privativo.

Esa conclusión está sostenida por lo resuelto en el caso de *La Sociedad de Auxilio Mutuo* v. *Rossy*, 17 D.P.R. 83. En el curso de la opinión se dijo:

"Si la finca de que se trata hubiera pertenecido realmente a las Mollfulleda en el momento o después de verificarse la anotación obtenida por el apelante, dicha anotación hubiera surtido todos sus efectos legales; pero cuando tal anotación se llevó a efecto, ya la finca no pertenecía a las Mollfulleda, y en su virtud era completamente ineficaz.

"No puede considerarse al apelante como un tercero, ni cabe regular su caso por los principios que rigen la doble venta de bienes inmuebles. El sólo tenía y tiene una acción personal contra las Mollfulleda y no una acción real sobre la finca que fué de ellas. El hecho de la anotación no puede convertir por sí solo la acción personal en acción real.

"El haberse inscrito en el registro la finca a favor de las Mollfulleda y haberse anotado acto seguido la demanda en cobro de pesos por honorarios, interpuesta contra ellas por el apelante, no puede destruir, ni afectar siquiera, los derechos de los demandantes y apelados con respecto a dicha finca, derechos que fueron adquiridos en virtud de una compraventa realizada con anterioridad y hecha constar en documento público, aun cuando dicha compraventa no estuviera inscrita en el registro al tiempo de verificarse la anotación.

"La anotación en este caso se obtuvo de acuerdo con las prescripciones de la ley en vigor sobre efectividad de sentencias, cuyos

preceptos guardan estrecha relación con los artículos 42 y siguientes de la Ley Hipotecaria.

"Comentando dichos artículos y al tratar sobre los efectos de las anotaciones preventivas en general, los comentaristas Galindo y Escosura en su obra sobre Legislación Hipotecaria, vol. 2, pág. 482, se refieren a la Exposición de Motivos de la ley y luego dicen: 'A ellos, por tanto, remitimos al lector, no sin llamar su atención acerca de las S. de 9 de mayo y 23 de septiembre 1873, según las que, las anotaciones judiciales no pueden calificarse de sentencias definitivas, porque no declaran derechos, siendo esencialmente revocables y transitorias; y la de 17 de junio de 1875, en que se resuelve que las anotaciones preventivas que se hacen para asegurar las consecuencias de un juicio, tienen *limitados sus efectos a este solo fin;* pero no alteran la índole y naturaleza de la obligación cuyo cumplimiento se·quiere asegurar, ni de simple la convierten en hipotecaria, ni lastiman los derechos que sobre la finca puedan tener terceras personas, doctrina que se repite en las S. de 5 abril, 1878, 10 octubre 1882 y 19 febrero 1886.'

" 'Por esto es opinión general, confirmada por la Sent. de 10 julio 1889, que quien, en juicio ejecutivo para el cobro de una deuda no hipotecaria, logra el embargo de una finca que resulta vendida anteriormente, aunque el comprador no la hubiese inscrito a su nombre, tiene mejor derecho que el embargante cuyo crédito carece del carácter de derecho real que no le da el embargo.'

"Y esta misma Corte Suprema de Justicia de Puerto Rico, en el caso de *Vidal & Cía., et al* v. *Banco Territorial y Agrícola,* I Castro, 204, estableció la siguiente doctrina: 'Al acreedor que obtuviere anotación preventiva de un embargo practicado en bienes inmuebles o créditos hipotecarios del deudor, no se le puede estimar como tercero, toda vez que los artículos 44 de la Ley Hipotecaria y 1923 del Código Civil le conceden únicamente el derecho de preferencia respecto a los bienes anotados y sólo en cuanto a créditos posteriores.'

" 'Las anotaciones de embargo practicadas en bienes inmuebles o créditos hipotecarios del deudor, no pueden perjudicar el derecho de dominio que sobre los mismos bienes o créditos hubiere adquirido un tercero con anterioridad a dicha anotación.'

" 'Las disposiciones del artículo 71 de la Ley Hipotecaria se refieren a enajenaciones o gravámenes realizados o constituídos, respectivamente, con posterioridad a la anotación, como se deduce de un examen comparativo de dicho artículo y del 44 de la misma Ley.' "

Sabido es que el artículo 1172 del Código Civil de Puerto Rico (1930) dice en su párrafo primero: "Los documentos públicos hacen prueba, aun contra tercero, del hecho que motiva su otorgamiento y de la fecha de éste."

Y parece conveniente referirnos además a lo dicho por esta corte en el caso de *Santini Fertilizer Co.* v. *González et al.*, 39 D.P.R. 758. Fué así:

"Inferimos del alegato de la apelante que los querellados habían presentado en evidencia dos escrituras otorgadas en 1917 tendientes a demostrar que los terrenos embargados por la Santini Fertilizer Co. eran un bien privativo de la esposa, Rosa González, y que estas escrituras habían sido debidamente inscritas en el registro de la propiedad, después de haberse hecho una anotación preventiva de embargo, pero antes de que se instituyera el procedimiento de *injunction*. Por consiguiente, la propiedad embargada era inscribible a nombre de la esposa como privativa de ella, al tiempo de radicarse la petición de *injunction*. Esto era más que suficiente para destruir cualquier presunción respecto al carácter de gananciales de los bienes inmuebles ya inscritos a nombre de la esposa.

"De una certificación en forma narrativa expedida a instancias del demandante por el Secretario de la Corte de Distrito de San Juan aparece que antes de que se radicara la petición de *injunction*, Rosa y Demetria Pedraza habían presentado en la Corte de Distrito de San Juan su reclamación como dueñas de las 161 cuerdas de terreno embargadas en la acción original. La caña en estado de crecimiento había sido embargada como parte del inmueble. La teoría del embargo fué que el demandado Fernando González tenía una participación en los terrenos inscritos a nombre de su esposa Rosa Pedraza. Esta teoría descansaba por completo en la presunción relativa al carácter ganancial de esos terrenos. El embargo no afectó el título de la consorte a sus bienes privativos, ni creó gravamen alguno sobre ellos.

"Puede muy bien concebirse que Fernando González haya tenido alguna participación en la caña que se cultivaba en la finca privativa de su esposa, pero el peso de la prueba recaía sobre la peticionaria en el procedimiento de *injunction* para demostrarlo. La presunción de que la caña era un bien ganancial se esfumó con la presunción respecto al carácter ganancial que tenía el terreno. Incumbía entonces a la peticionaria establecer algún otro fundamento para su remedio en equidad. Por tanto, la corte de dis-

trito no erró al denegar el *injunction* y al anular la orden preliminar, ni al basar su actuación en los casos arriba citados."

Ya dijimos que no se presentó prueba alguna que demuestre la falsedad de las escrituras públicas otorgadas en 1917 e inscritas en 1927 presentadas por la parte demandante. Para probar sus defensas ¿qué aportó la demandada? Las declaraciones de José A. Negrón y José O. Martínez.

Dichas declaraciones fueron admitidas con la oposición de la parte demandante. Los testigos son empleados de la demandada. Ocúpase el primero entre otras cosas en la concesión de créditos a los clientes y dijo que el método seguido es el de practicar una investigación por medio del empleado que va a vender el abono. "El empleado hace varias preguntas y llena su informe." Luego se comprueba el informe por los datos del registro. Dijo que era empleado desde 1924 y que en este caso el otro empleado Martínez practicó la investigación y trajo el informe. Martínez declaró que en efecto practicó la investigación, le preguntó a González y éste le dijo que "tenía propiedades de 161 cuerdas y ganado." Y que rindió el informe que se comprobó por el registro. El informe mismo, no fué presentado. González no fué llamado a declarar. No hay en los autos la más leve admisión de la esposa.

Bajo esas circunstancias ni siquiera se puede aceptar como probado de modo satisfactorio que González diera informes falsos con respecto a que tuviera alguna participación en la finca de que se trata, pero aunque se aceptara ¿podría ser perjudicada en sus derechos la esposa que demuestra que la finca le pertenece privativamente por un título de fecha anterior no sólo al embargo sino al comienzo de las relaciones contractuales de su esposo con la demandada? En manera alguna a nuestro juicio.

La jurisprudencia sentada en el caso citado en su opi-

260

nión por la corte de distrito, *Dolbeer* v. *Livingston,* 100 Cal. 617, se establece en el sílabo, así:

"Un fiador que firma una fianza en la creencia y en la confianza de que sus fiados trataban de obtener el fletamento de un vapor y esperaban fletar uno del dueño del mismo a quien todas las partes conocían como dueño, no puede alegar, en oposición a dicho dueño que recibió la fianza de buena fe sin saber ni tener razón para sospechar de que la misma no había sido ejecutada debidamente, que la fianza no era un instrumento válido debido a que los espacios en blanco para ser llenados con los nombres del vapor y del dueño no habían sido llenados al tiempo de ejecutarla sino que fueron llenados por sus fiados sin autoridad expresa.

"Cuando de dos personas inocentes una de ellas debe sufrir las consecuencias de los actos de un tercero, debe sufrirlas aquella cuya negligencia fué la causa de ellos."

Basta leerla para concluir que no puede regir este caso de acuerdo con la evidencia practicada en el mismo.

Quizá la corte sentenciadora consideró aplicables las siguientes citas que la opinión contiene, a saber:

"La regla general es que 'cuando una persona por su lenguaje o por su conducta induce a otra a actuar en la creencia de que existía cierto estado de cosas, no puede, por lo que se refiere a esa persona, alegar un estado de cosas diferente.' (7 Am. & Eng. Ency. of Law, 19.)

" 'Un impedimento *in pais* puede definirse como un derecho que nace de los actos, admisiones, o conducta que han inducido a un cambio de actitud de acuerdo con la intención real o aparente de la persona contra quien se alegan.' (Bigelow on Estoppel, 4th. ed., 445).

" 'Cuando una persona tácitamente incita a que se verifique un acto no puede después ejercer su derecho legal en oposición a tal consentimiento, si su conducta o sus actos de incitación indujeren a la otra parte a cambiar su actitud con el resultado de ser perjudicado pecuniariamente por la reclamación de dicho adversario.' (Scott v. Jackson, 89 Cal. 258.)"

Pero ¿dónde está aquí la prueba de la conducta de la esposa que pudiera inducir a la demandada a considerarla responsable del crédito que se decidió a abrir al esposo? La misma circunstancia de figurar inscrita la finca a favor de

la esposa, que si bien lleva consigo la presunción de ganancial cuando se trata de adquisiciones onerosas, no es lo usual, debió por lo menos haber llamado la atención de la demandada y guiádola a investigar el caso más de cerca.

Fué en verdad la esposa negligente al no presentar por tanto tiempo su título en el registro, y esa negligencia no ha dejado de perjudicarla en este mismo pleito que no hubiera surgido de haber sido diligente, pero no puede en manera alguna tener las consecuencias que pretende la parte demandada. Repetimos que no hay la más leve prueba en los autos de la conducta de la esposa en relación con esperanza alguna de garantía dada por ella a la demandada, y que la propia prueba del informe del esposo no es satisfactoria. Ni en ley ni en equidad está justificado el embargo.

*En tal virtud, debe revocarse la sentencia recurrida y en su lugar dictarse otra declarando la demanda con lugar, sin especial condenación de costas.*